## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTONIO D. NAYLOR** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-713** |
| **ATLANTIC SOUNDING CO., INC.** | **SECTION: "S" (1)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment regarding maintenance (Doc. #23) is **GRANTED**, as to his entitlement to maintenance for the period June 9, 2010, through May 25, 2011.  The motion is **DENIED** as to punitive damages, and an increase in Naylor's *per diem* maintenance amount.

### BACKGROUND

On September 28, 2009, plaintiff, Antonio Naylor, injured his back while working as a seaman aboard the DREDGE G. D. MORGAN, a vessel operated by his employer defendant, Atlantic Sounding Co., Inc.  Atlantic Sounding began paying maintenance to Naylor on October 1, 2009, at a rate of $20.00 per day.

On June 8, 2010, Naylor's treating physician, Dr. Charles R. Billings, discussed surgical options with Naylor.  Naylor chose not to undergo surgery.  Dr. Billings ordered continuation of medications, a home exercise program, and proper body mechanics, and released Naylor to perform sedentary work.  Atlantic Sounding ceased Naylor's maintenance payments on June 9, 2010.

On August 24, 2010, Naylor expressed to Dr. Billings his intention to undergo surgery.  On December 13, 2010, Dr. David J. Gandy performed a pre-surgical independent medical examination, and concurred with Dr. Billings' recommendation for surgery.  Thereafter, Atlantic Sounding approved the surgery.

After a delay due to Dr. Billings' unavailability, on May 25, 2011, Dr. Billings performed a lumbar fusion on Naylor.  On May 25, 2011, Atlantic Sounding resumed Naylor's maintenance payments.  Also, on May 27, 2011, Naylor's attorney confirmed with Atlantic Sounding's attorney Atlantic Sounding's agreement to increase Naylor's maintenance payments to $35.00 per day retroactively to the date of the accident, excluding the period of June 9, 2010, through May 25, 2011.  Atlantic Sounding has paid all of Naylor's medical expenses related to the September 28, 2009, injury.

Naylor filed a motion for partial summary judgment arguing that he is entitled to maintenance payments for the period from June 9, 2010, through May 25, 2011.  He argues that he had not reached maximum medical improvement as of those dates, and that he is entitled to punitive damages for Atlantic Sounding's willful, wanton and callous failure to pay maintenance during this period.  Further, he argues that his rate of maintenance should be increased to $40.00 per day.

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." <u>Amburgey v. Corhart Refractories Corp.</u>, 936 F.2d 805, 809 (5th Cir.

1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that

there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the

existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The

non-movant cannot satisfy the summary judgment burden with conclusory allegations,

unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069,

1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving

party does not have to submit evidentiary documents to properly support its motion, but need only

point out the absence of evidence supporting the essential elements of the opposing party's case.

Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## B.     Maintenance and Cure

"Maintenance and cure is an ancient duty imposed upon a shipowner to provide for a seaman

who becomes ill or injured during his service to the ship." Silmon v. Can Do. II, Inc., 89 F.3d 240,

242 (5th Cir.1996).  Maintenance is a subsistence allowance intended to cover the reasonable costs

a seaman incurs for his food and lodging during the period of his illness.  See Guevara v. Mar.

Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995), abrogated on other grounds, Atl. Sounding Co.,

Inc. v. Townsend, 129 S.Ct. 2561 (2009); THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME

LAW § 6-32, at 358 (2d ed. 1994). "The right terminates only when maximum cure has been

obtained." Bertram v. Freeport McMoRan, Inc., 35 F.3d 1008, 1012 (5th Cir. 1994) (internal

quotation and citation omitted).   "Maximum cure is achieved when it is probable that further

treatment will result in no betterment of the seaman's condition." Springborn v. American

Commercial Barge Lines, Inc., 767 F.2d 89, 95 (5th Cir. 1985).  However, if "the seaman refuses

treatment, the employer is not obligated to make payments for the days voluntarily spent without care." MNM Boats, Inc. v. Johnson, 248 F.3d 1139 (5th Cir. 2001) (citing Brown v. Aggie & Millie, Inc., 485 F.2d 1295, 1296 (5th Cir. 1973)).

"The Supreme Court has long recognized the importance of these remedies . . . and has declared that the doctrines of maintenance and cure are to be liberally construed to benefit the seaman." Cooper v. Diamond M Co., 799 F.2d 176, 179 (5th Cir. 1986) (quoting Caufield v. AC&D Marine, Inc., 633 F.2d 1129, 1132 (5th Cir. 1981)). Ambiguities or doubts regarding the entitlement to maintenance and cure are resolved in the seaman's favor. Id. (citing Vaughan v. Atkinson, 82 S.Ct. 997, 1000 (1962)). The duty is implied in maritime employment contracts and is not premised on the fault or negligence of the shipowner. Silmon, 89 F.3d at 242.

Atlantic Sounding argues that Naylor is not entitled to recover maintenance for the period of June 9, 2010, through May 25, 2011, because Naylor had voluntarily ceased receiving medical treatment during this time, and had been released to perform light duty. Naylor argues that he should not be penalized for the delay in the surgery that was caused by the surgeon's unavailability.

Atlantic Sounding has presented evidence that on June 8, 2010, Naylor chose not to undergo surgery, but that he subsequently changed his mind. Thereafter, Dr. Billings was unavailable to perform the surgery from August 24, 2010, to May 25, 2011, six months after Dr. Grandy concurred that the surgery was appropriate, and ten months after Naylor decided to have the surgery. Dr. Billings' records indicate that in the interim Naylor continued with non-operative treatments of medication, home exercise, and body mechanics.[1] From June 9, 2010, to May 25, 2011, Naylor did

---

[1] Naylor was also treated by Dr. Webb for post traumatic stress disorder during this time.

not voluntarily discontinue treatment, nor had he reached maximum medical improvement. Therefore, Naylor's motion for summary judgment is GRANTED as to his entitlement to maintenance payments for this period.

## C.     Punitive Damages

When an employer receives a claim for maintenance and cure, it is entitled to investigate and require corroboration of the claim before making payments. MNM Boats, Inc., v. Johnson, 248 F.3d 1139 (5th Cir. 2001) (citing Morales v. Garijak, Inc., 829 F.2d 1355, 1358 (5th Cir. 1995), abrogated on other grounds, Guevara, 59 F.3d 1496).  If the employer, after conducting the investigation, unreasonably refuses to pay maintenance and cure, it is liable for maintenance and cure and also compensatory damages. Id.  Further, if the employer has shown callousness and indifference to, or willful and wanton disregard for, the seaman's injuries, it is liable for punitive damages and attorneys' fees. Id.; see also Atl. Sounding, 129 S.Ct. at 2575.

Although Naylor did not voluntarily cease medical treatment on June 8, 2010, there are genuine issues of material fact regarding whether Atlantic Sounding acted willfully, wantonly and callously in failing to pay maintenance for the period of June 9, 2010, through May 25, 2011, that preclude summary judgment on the issue of punitive damges.

## D.     Amount of Maintenance

Naylor seeks a ruling that he is entitled to $40.00 per day as the amount of his maintenance from the date of the injury until he reaches maximum medical improvement.

To recover maintenance, the seaman plaintiff must produce "evidence to the court that is sufficient to provide an evidentiary basis for the court to estimate his actual costs."  Hall v. Noble

Drilling (U.S.) Inc., 242 F.3d 582, 590 (5th Cir. 2001).  If the seaman has incurred living expenses,

he is entitled to the reasonable cost of food and lodging.  Id. at 587.  "A seaman's burden of

production in establishing the value of maintenance is feather light: his own testimony as to

reasonable cost of room and board in the community where he is living is sufficient to support an

award." Yelverton v. Mobile Labs., 782 F.2d 555, 558 (5th Cir. 1986) (citing Curry v. Fluor Drilling

Services, Inc., 715 F.2d 893 (5th Cir. 1983).  Lodging includes expenses "necessary to the provision

of habitable housing," such as heat, electricity, home insurance, and real estate taxes.  Hall, 242 F.3d

at 587 n. 17 (citing Gillikin v. United States, 764 F.Supp. 270, 273 (E.D.N.Y. 1991)).

 The court's determination of the appropriate  amount of the maintenance involves three

steps:

  First, the court must estimate two amounts: the plaintiff
seaman's actual cost of food and lodging; and the reasonable cost of
food and lodging for a single seaman in the locality of the plaintiff.
In determining the reasonable cost of food and lodging, the court may
consider evidence in the form of the seaman's actual costs, evidence
of reasonable costs in the locality or region, union contracts
stipulating a rate of maintenance or per diem payments for shoreside
food or lodging while in the service of the vessel, and maintenance
rates awarded in other cases for seamen in the same region.  A
seaman need not present evidence of the reasonable rate; a court may
take judicial notice of the prevailing rate in the district.

  Second, the court must compare the seaman's actual expenses
to reasonable expenses.  If the actual expenses exceed reasonable
expenses, the court should award reasonable expenses.  Otherwise the
court should award actual expenses.  Thus the general rule is that
seamen are entitled to maintenance in the amount of their actual
expenses on food and lodging up to the reasonable amount for their
locality.

> Third, there is one exception to this rule that the court must consider. If the court concludes that the plaintiff's actual expenses were inadequate to provide him with reasonable food and lodging, the plaintiff is entitled to the amount that the court has determined is the reasonable cost of food and lodging.

Hall, 242 F.3d at 591 (internal citations omitted).

Naylor presented evidence of his monthly food and lodging expenses: (1) rent at $650.00; (2) utilities at $300; and (3) food at $300. These expenses total $1250 per month, and average to $41.66 per day. In Mier v. Wood Towing, L.L.C., 2010 WL 21995700 (E.D. La. 5/28/2010) (J. Lemmon), the court reviewed the jurisprudence regarding the prevailing rate of maintenance in the district and found that is approximately $38.83 per day. The $38.83 recognized in Mier in 2010 would be roughly equivalent to $39.46 per day in 2011.[2]

Naylor has established that his average expenses were $41.66 per day. On May 27, 2011, the parties' attorneys confirmed Atlantic Sounding's agreement to increase Naylor's maintenance payments from $20.00 per day to $35.00 per day, retroactive to the date of the injury, but excluding the period of June 9, 2010, through May 25, 2011.

The purpose of maintenance is to provide a subsistence allowance to a convalescing seaman to cover the reasonable costs of his food and lodging. See Guevara, 59 F.3d at 1499. Although Naylor's actual daily expenses were slightly higher than the agreed upon amount of maintenance, $35.00 per day is a reasonable to provide a subsistence allowance considering the prevailing rate of maintenance in this district of $39.46 per day. Thus, there are no grounds upon which to justify

---

[2]   The average inflation rate from May 2010 (the date of the Mier decision) to May 2011 (the most recent data) was 1.63%. See http://inflationdata.com.

disturbing the parties agreement, and plaintiff's motion is DENIED as to an increase in his daily rate of maintenance.

### CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment regarding maintenance (Doc. #23) is **GRANTED**, as to his entitlement to maintenance for the period June 9, 2010, through May 25, 2011.  The motion is **DENIED** as to punitive damages, and an increase in Naylor's *per diem* maintenance amount.

New Orleans, Louisiana, this   30th   day of June, 2011.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

8